■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CALVIN BAKER, Appellant. [819 NYS2d 744]—

Judgment, Supreme Court, New York County (Marcy L. Kahn, J., at hearing; Laura Visitacion-Lewis, J., at jury trial and sentence), rendered February 27, 2002, convicting defendant of criminal sale of a controlled substance in the third degree, and sentencing him, as a second felony offender, to a term of 4½ to 9 years, unanimously affirmed.

At trial, Detective Johnson testified that he observed defendant through high-power binoculars walking up and down W. 127th Street between St. Nicholas Avenue and St. Nicholas Terrace. When a brown Ford van pulled up and double-parked a few feet from defendant, the front passenger, later identified as Rick McKinnon, got out of the van and approached defendant. Johnson watched McKinnon say something to defendant and hand money to him. After counting the money, defendant

handed McKinnon a small object. After McKinnon got back into the van, Johnson broadcast to other police officers what he had seen, and described defendant, McKinnon, the van and the direction in which it was traveling.

Detective Callahan and Lieutenant Cuff thereafter approached the van when it was stopped in traffic. When Cuff opened the front passenger door, a "startled" McKinnon had his hand by his leg. As Cuff started to remove McKinnon, a glassine envelope marked "Heat," which subsequent analysis revealed to contain heroin, fell from under McKinnon's leg onto the floor of the van. The van appeared to be a "work" or "cargo" van with "a lot of" tools and machinery in the back. In addition, Cuff spotted a glass crack pipe on the floor, also in the front-passenger area, and recovered it as well. Cuff asked McKinnon, in substance, whether there was anything else in the van, explaining that he was asking "so I don't have to search the whole thing." Without objection, Cuff testified that McKinnon responded, in an apparent reference to the glassine, "No, that's it. That's all I bought was that."

After his radio transmission, Johnson kept defendant under observation. Over the course of about 30 minutes, Johnson observed defendant "interact[ing]" with several other individuals.[1] Thereafter, Johnson lost sight of defendant several times, but saw defendant go into a bodega and, on two occasions, into a "tenement" at 372 W. 127th Street. When defendant emerged the second time from the tenement, he had changed his outer garments except for his sneakers. Eventually, defendant was arrested; Callahan recovered $65 but no drugs from defendant's person. Back at the precinct, Johnson recognized McKinnon as the man who had got back into the van after handing money to defendant in exchange for an object.

At the time of his arrest, defendant was holding keys in his hand. As discussed below, defendant made statements to Callahan about the keys and the location of his residence. One of the keys opened the door to 372 W. 127th Street.[2]

Although the prosecution introduced additional evidence,

---

**1.** The trial judge precluded the prosecution from eliciting testimony from Johnson, consistent with his testimony at the suppression hearing, that during this period he saw defendant hand a small object to each of these individuals in exchange for money.

**2.** Eight glassine envelopes containing heroin and marked "Heat" were recovered from an unlocked "master mailbox" in the lobby. However, the trial judge precluded the prosecution from eliciting testimony about their recovery, stating that the grand jury's determination not to charge defendant with possessing them weighed "heavily" in her decision.

including a redacted transcript of defendant's grand jury testimony, neither that evidence nor the evidence presented by defendant is relevant to the principal issue on this appeal. That issue centers on the court's responses to notes from the jury.

During deliberations, the jury asked whether it would have been lawful for the police to search the van and its driver when the van was stopped and to search the premises of 372 W. 127th Street following defendant's arrest. Without objection, the court responded by instructing the jury that "matters involving searches are questions of law, not fact," that "these inquiries are outside of the scope of the jury's role" and that the jury was "not [to] enter into any speculation with respect to these matters." After receiving another note stating that the jury was deadlocked, the court gave the jury an *Allen* charge. Although defendant moved for a mistrial upon being apprised of the deadlock note, defendant voiced no objection to the content of the *Allen* charge. Thereafter, the court responded, also without objection, to another note asking primarily for a rereading of the court's charge on reasonable doubt and circumstantial evidence.

The jury then sent another note. In its main charge the court had instructed the jury that the prosecution was required to prove beyond a reasonable doubt that the item transferred by defendant to McKinnon was the glassine envelope marked "Heat" that was recovered from the floor of the van. In the note, the jury stated that two of the court's instructions "appear contradictory." After noting the earlier instruction, and that the court had stated that the inference that the item transferred was the glassine had to be the only reasonable inference, the note stated as follows: "However, you say we can't consider the lack of search of the van as evidence even though it introduces other possible inferences. Do we need to assume that the contraband [the crack pipe and the glassine envelope] were the only drugs, paraphernalia in the [van]?"

After extensive colloquy, the court drafted a proposed response, received the comments of the parties on the draft and made revisions in light of the comments. In substance, the court responded first by repeating its instruction that the prosecution was required to prove beyond a reasonable doubt that the defendant had sold to McKinnon the glassine envelope marked "Heat." One of defendant's principal contentions on this appeal is that the court erred when it went on to instruct the jury as follows: "In determining whether the People have met their burden of proving this element beyond a reasonable doubt, the jury may take into account all of the evidence that's been

introduced at trial. The jury may also consider whether there is a lack of convincing evidence to establish this element beyond a reasonable doubt. This does not mean that the jury may speculate regarding matters that are not in evidence. Therefore, whether or not any other contraband was in the van is not an area for your consideration. You may not make assumptions with respect to this matter." Finally, the court repeated its circumstantial evidence charge after alerting the jury that whether the glassine envelope was the item transferred "is the subject of the circumstantial evidence analysis."

In response to yet another note, the court reread the circumstantial evidence instruction, deleting at the jury's request the rain and umbrellas analogy. The jury immediately sent a final note which requested a rereading of what the court had stated with regard to "the contradictory instructions." The court complied and the jury later returned its verdict finding defendant guilty of selling a glassine envelope of heroin to McKinnon.

Defendant's present contention is that although the court repeatedly and correctly instructed the jury that it could consider the lack of evidence in determining whether the prosecution had proven its case beyond a reasonable doubt, the court nonetheless erred. Specifically, defendant maintains that the court erroneously undercut that instruction by charging the jury in response to its note that it was not to speculate about whether or not there was any other contraband in the van. According to defendant, the court should have instructed the jury that it was "entitled to consider, as a lack of evidence, the fact that the People did not provide evidence of whether or not there was anything else in the van."

This specific claim of error, however, is not preserved for appellate review and we decline to review it. At trial, defendant voiced a different objection. That is, defendant's attorney argued that his "only point" was that "a juror would be entitled to consider the fact that the van was not searched as part of the lack of evidence." Moreover, when the court stated to counsel that "we can't include in the lack of evidence things that maybe could have been found in various places," counsel responded, "Okay. I accept that." Continuing, the court stated, "It's a speculation that's not allowed under the law." Again, counsel responded, "I accept that."

To the extent defendant is renewing the objection he raised below, it is without merit. From the fact that the van was not searched, the jury could not reach any reasonable conclusion. An inference adverse to the prosecution could be drawn only if

the jury had a basis in the evidence for concluding that the police lawfully could have searched the van. However, there was no such basis. At no point during the trial did defendant raise any challenge on cross-examination to the conduct of the police in not searching the van; nor did defendant request (during either the prosecution's case or the defense case) that the jury be instructed on the legal authority of the police to have searched the van. Accordingly, the court properly instructed the jury when it inquired on this precise subject that "matters involving searches are questions of law, not fact" and that the jury was "not [to] enter into any speculations with respect to these matters." At bottom, this correct instruction, to which defendant voiced no objection, is inconsistent with the contention that "a juror would be entitled to consider the fact that the van was not searched as part of the lack of evidence."

Were we to review defendant's more general contention that the jury should have been instructed that it "was entitled to consider, as a lack of evidence, the fact that the People did not provide evidence of whether or not there was anything else in the van," we would reject it. In the first place, a fatal flaw in this contention is that its premise is incorrect. In fact, the People did provide such evidence. As noted, Lieutenant Cuff asked McKinnon whether there was anything else in the van and, without objection, McKinnon responded, "No, that's it. That's all I bought was that." To be sure, this evidence was not definitive evidence that there was no other contraband in the van, but it nonetheless was evidence of that fact (and, for that matter, that the glassine envelope containing heroin and marked "Heat" was the item defendant had transferred to McKinnon). Beyond this, defendant's current contention suffers from the same flaw as the more specific contention he pressed below. That is, the ostensible lack of evidence on the issue of whether or not there was any other contraband in the van could not afford a basis for any reasonable conclusion or inference by the jury unless it were assumed that the police lawfully could have searched the van.[3]

The challenges to the prosecutor's summation are all meritless. In particular, we note that there was nothing improper

---

**3.** We note that this case is unlike *People v Williams* (5 NY3d 732 [2005]). On summation, defense counsel never even raised the subject of the police not searching the van. Of course, that may well have been a considered decision, for it would have invited the prosecution to respond by reminding the jury of Lieutenant Cuff's testimony about what McKinnon stated when asked whether there was anything else in the van. In any event, the point is that the court's instruction to the jury did not "effectively deprive[ ] defendant of the force of his defense" (*id.* at 735).

about the prosecutor's argument that defendant lied about the keys because he kept his stash in the building and did not want the police to know he lived there. This argument was based on the evidence and urged the jury to draw the inference (consistent with unobjected-to testimony from Detective Callahan that persons who sell drugs do not often keep their stash on their person) that defendant's stash was in the building. As noted, defendant received a highly favorable ruling from the trial court that barred the prosecution from eliciting evidence that glassine envelopes stamped "Heat" were recovered from an unlocked mailbox in the building lobby. The prosecutor made no reference to those glassine envelopes in the challenged remarks, and nothing about the court's ruling conferred upon defendant the additional benefit of barring the prosecutor from asking the jury to draw the reasonable inference from the evidence that defendant kept his stash in the building. Moreover, defendant received an undue benefit when the court sustained objections to the prosecutor's proper arguments and either instructed the jury to disregard the comment or directed the prosecutor to move on. Defendant's other complaint about the prosecutor's summation also is meritless, as the prosecutor's argument was directly responsive to defense counsel's arguments and invited the jury to draw common sense conclusions from the evidence.

Defendant's challenge to the court's ruling on his motion to suppress statements he made to Detective Callahan is unavailing. As defendant was being arrested, Detective Callahan asked him what the keys he had in his hands were for. In response, defendant stated "My house." Detective Callahan further testified at the suppression hearing that after handcuffing defendant and placing the keys in a property envelope, he asked defendant where he lived. He asked this question in order to complete the cover sheet of the envelope. Defendant responded that he lived at 953 DeKalb Avenue in Brooklyn. Thereafter, Detective Callahan again asked defendant if the keys were to his residence in Brooklyn, and defendant answered that they were.

We need not determine whether defendant's motion to suppress these statements properly was denied on the ground that they were made in response to routine administrative questioning that were not likely to elicit incriminating admissions (*see Pennsylvania v Muniz*, 496 US 582, 600-601 [1990]; *People v Rodney*, 85 NY2d 289, 293-294 [1995]), as there is no reasonable possibility that the introduction of the statements at trial played a role in the jury's verdict (*see People v Douglas*, 4 NY3d 777 [2005]). The probative value of the statements was limited,

as they were offered as false exculpatory statements. The prosecution, moreover, would have had an independent basis for admitting the statements, because defendant testified before the grand jury and stated that he lived at 372 W. 127th Street with his brother. Thus, the statements were admissible to impeach his testimony (*Harris v New York*, 401 US 222, 225-226 [1971]). To be sure, had the statements been admitted solely to impeach defendant's testimony, the prosecutor could not have argued as he did that defendant had lied about the keys because he kept his stash in the building and did not want the police to know he lived there. As noted, however, the trial court sustained defendant's objection to this argument, and went on to instruct the jury to disregard the reference to a stash in the building. In addition, on summation defense counsel offered innocent explanations for why defendant may have given an "old address." Finally, defendant's trial testimony was not credible in numerous respects and, despite the difficulties some jurors had in reaching a guilty verdict, the evidence of guilt was overwhelming from any rational perspective.

Defendant's remaining contentions are unpreserved and we decline to review them in the interest of justice. Were we to review these claims, we would reject them. Concur—Mazzarelli, J.P., Andrias, Gonzalez and McGuire, JJ.